UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| PAMELA COOPER, | ) | Civil Action No.: 4:10-cv-1676-JMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CITY OF NORTH MYRTLE BEACH; | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.     INTRODUCTION

In this action, Plaintiff brings a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e) et seq. Presently before the Court is Defendant's Motion for Summary Judgment (Document # 16). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC. Because this is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

## II.     FACTS

Plaintiff Pamela Cooper is a former employee of defendant City of North Myrtle Beach. She last worked in the City's Public Safety Department as a patrol officer. Plaintiff Dep. p. 15. Plaintiff is friends with Carol Johnson, another former City patrol officer. Plaintiff Dep. p. 16. Johnson was terminated on July 3, 2008, after a number of incidences of poor judgment, culminating in her hiding her ten year old child in a City fire station while she went to work another job. Johnson Termination Memorandum (attached as Ex. A to Defendant's Motion). In December 2008, Johnson filed a charge of discrimination against the City with the South Carolina Human Affairs Commission ("the

SCHAC"). Johnson Charge of Discrimination (attached as Ex. B to Defendant's Motion). By letter dated January 8, 2009, the SCHAC notified Verlinda Jones, the City's Human Resources Director, that Johnson's charge had been filed. Johnson Charge of Discrimination. According to Plaintiff, she was the subject of retaliation by the City because Johnson, her friend, filed a charge of discrimination with the SCHAC. Plaintiff Dep. pp. 16-17.

At the time of Johnson's termination, the City's Public Safety Director was William Bailey. Johnson Termination Memorandum. Before he was appointed Public Safety Director, Bailey had been a lieutenant who supervised Plaintiff. Plaintiff Dep. pp. 15-16. Plaintiff believes she fell out of favor with Bailey before he ever became the City's Public Safety Director. Plaintiff Dep. p. 45. According to Plaintiff, the two "butted heads several times on several situations, not necessarily involving the department. [Bailey] didn't appreciate me standing up for what I believed in." Plaintiff Dep. p. 45. Additionally, at least a year prior to Johnson's termination, and thus at least a year and a half before the City learned Johnson had filed a charge of discrimination with the SCHAC, Bailey warned Plaintiff and Johnson that they "should not hang around each other because [Johnson] wasn't liked and [Plaintiff] wasn't liked and if [they] hung around [they] were both going to be in trouble." Plaintiff Dep. pp. 17-18.

Plaintiff received overall "meets expectations" evaluations in 2001, 2003, 2004, 2005, 2006, and 2007.[1] However, she received "below expectations" reviews in individual categories. In 2001, Plaintiff received "substantially exceeds" and "exceeds expectations" in Attendance and "meets expectations" in areas such as Knowledge of Job, Quality of Work, Quantity of Work, Initiative and

_____

[1] These dates indicate the year to which the evaluation pertains rather than the date on which the evaluation was completed. For example, the evaluation for year 2001 was completed on March 17, 2002. Plaintiff Dep. Ex. 5.

Enthusiasm, Judgment, Coordination of Work and Safety and Housekeeping.  Plaintiff Dep. Ex. 5.

Plaintiff received two "below expectations" in Cooperation and Relationship with Others. However,

Plaintiff also received "meets expectations" in other areas of Cooperation and Relationship with

Others to include the areas of Works with and communicates well with supervisors, Works with and

communicates well with customers/external parties, does not try to avoid work, uses good effort in

completing assignments.  Plaintiff Ex. 6.  Plaintiff received "below expectations" marks on her

annual performance evaluation for "accepts instruction and direction but questions without good

cause" and "works with and communicates fairly well with co-workers." Plaintiff Dep. Ex. 5.  In the

comments section at the end of that evaluation, Plaintiff's supervisor, Renee Best, wrote that

"Cooper accepts instruction but she sometimes questions instructions that are given to her" and that

she "sometimes doesn't have an open line of communication with her co-workers." Plaintiff Dep.

p. 34.  Plaintiff did not disagree with that assessment. Plaintiff Dep. p. 34.

In 2003, Plaintiff received "meets expectations," "exceeds expectations," and substantially

exceeds expectations" in all areas including those areas that she had received "below expectations"

in 2002. Plaintiff Ex. 6.

In 2004, Plaintiff again received "meets expectations" and "exceeds expectations" in all

areas. Plaintiff Dep. Ex. 7.  Plaintiff received "exceeds expectations" in areas such as rarely does

work that is not clear/in good order, usually does more than expected amount of work, rarely has to

be watched over and directed, tardy only in case of verified emergency, rarely leaves work/work

station without justification, shows willingness to do unpleasant tasks, maintains an excellent work

place environment most of the time and always takes responsibility for the safety of co-workers.

Plaintiff Dep. Ex. 7.  Bailey, who completed her 2004 evaluation, noted that "Cooper has had

difficulty seeing issues from the perspectives of others. She often questions direction that she is given without cause." Plaintiff Dep. Ex. 7.

In 2005, Plaintiff he received "meets expectations" and "exceeds expectations" in all areas but one. Plaintiff Dep. Ex. 8. Bailey noted that Plaintiff "make[s] occasional errors [and] seems to get frustrated easily"; that she "could be more focused on shift and department goals" and "is difficult to motivate"; and under the heading "Cooperation" that she "has had a difficult year dealing with change and coping with different departmental challenges." Plaintiff Dep. Ex. 8.

Plaintiff's 2006 evaluation was completed by Lieutenant Randy Truss. Plaintiff Dep. Ex. 9. Plaintiff again received "meets expectations" or "exceeds expectations" in all but one area. Truss graded Plaintiff as "below expectations" for "accepts instruction and direction but questions without good cause." Plaintiff Dep. Ex. 9. Under the comment heading "Cooperation" he noted that Plaintiff "occasionally . . . expressed the need to function as an 'individualist' when performing patrol activities." Plaintiff Dep. Ex. 9. Plaintiff did not disagree with Truss's assessment. Plaintiff Dep. p. 38. Truss also wrote that Plaintiff needed to "take the opportunity to employ a team concept to routine patrol situations." Plaintiff Dep. Ex. 9. Finally, Truss wrote that Plaintiff "needs to develop a team approach when interacting with other members of the department." Plaintiff Dep. Ex. 9. Plaintiff "neither agree[d] or disagree[d]" with that portion of Truss's assessment, conceding that she was viewed as "standoffish" by her fellow officers. Plaintiff Dep. p. 39.

In Plaintiff's 2007 evaluation, she again received "meets expectations" or "exceeds expectations" in all but one area. Plaintiff Dep. Ex. 10. However, Truss noted a new area of concern in 2007: he graded Plaintiff as "below expectations" for "frequent excused or moderate unexcused absences." Plaintiff Dep. Ex. 10. Truss commented that "Cooper has had several unplanned and

-4-

unauthorized excuses during the last evaluation period." Plaintiff Dep. Ex. 10. The positive commentary included comments such as "Officer Cooper can be a dependable person when completing given task and reporting for work. Most tasks are finished while working and rarely does any follow up on her part have to be conducted. However, Plaintiff will not hesitate to ask for help from another squad member if an incident does needs additional attention." Plaintiff Dep. Ex. 10. The evaluation also states "Officer Cooper shows an interest in increasing her status as an officer that is fully capable of dealing with all situations. Cooper continues to demonstrate her ability to launch investigative tactics beyond the preliminary stage of an incident." Plaintiff Dep. Ex. 10. Further, the evaluation provides, "Officer Cooper continues to work and communicates exceptionally well with her supervisors. She has no trouble working with any officer assigned to the squad and is trying to use a team approach when interacting with other members of the department. Cooper is courteous when dealing with the public and other department employees." Plaintiff Dep. Ex. 10.

On June 27, 2008, Plaintiff was issued a written reprimand for taking a juvenile into custody because he was in possession of tobacco. Plaintiff Dep. Ex. 2. The minor Plaintiff detained had committed no crime.[2] However, Plaintiff brought the juvenile to the police station and charged him with possession of tobacco. Plaintiff Dep. pp. 23-24. Plaintiff, who has never known anyone else to arrest a juvenile for such an offense, did not bother to contact the juvenile court which she knew was available as a resource twenty-four hours a day to first assure that the arrest of the minor was

_____

[2]Under South Carolina law, "[a] minor under the age of eighteen years must not purchase, attempt to purchase, possess, or attempt to possess a tobacco product, or present or offer proof of age that is false or fraudulent for the purpose of purchasing or possessing a tobacco product." S.C. Code of Laws 1976 § 16-17-500(E)(1). "A minor who knowingly violates a provision of subsection (E)(1) in person, by agent, or in any other way commits a noncriminal offense and is subject to a civil fine of twenty-five dollars." Id. at (E)(2).

lawful.  Plaintiff Dep. p. 23-24.

Plaintiff had numerous injuries while employed with the City.  Workers Compensation First Report of Injury or Illness forms were filed on Plaintiff between 2005 and the time of her termination. On February 24, 2005, she injured her toe when she walked into a pole, necessitating light duty leave until March 8, 2005.  Report of Injury or Illness (attached as Ex. C to Defendant's Motion). On August 1, 2005, she hurt the same toe while searching for stolen property.  Report of Injury or Illness (attached as Ex. D).  On September 3, 2005, she fell while walking down some stairs.  Report of Injury or Illness (attached as Ex. E to Defendant's Motion). On March 19, 2006, she strained her neck while helping restrain a patient. Report of Injury or Illness (attached as Ex. F to Defendant's Motion).  On April 5, 2006, she fell down while running to her vehicle, necessitating light duty until April 10, 2006. Report of Injury or Illness (attached as Ex. G to Defendant's Motion). She went back on light duty from April 17 to April 19 for the April 5, 2006, injury.  Report of Injury or Illness (attached as Ex. H to Defendant's Motion). On November 27, 2006, she fell off of a chair and was on light duty until December 2, 2006.  Report of Injury or Illness (attached as Ex. I to Defendant's Motion). On July 30, 2007, she was bitten by an inmate and placed on light duty until August 10, 2007.  Report of Injury or Illness (attached as Ex. J to Defendant's Motion).  On August 24, 2007, she inured her knee walking on a treadmill, necessitating light duty until August 28, 2007. Report of Injury or Illness (attached as Ex. K to Defendant's Motion). She went back on light duty for knee pain on November 27, 2007.  Report of Injury or Illness (attached as Ex. L to Defendant's Motion). On January 8, 2008, she tore out a naval piercing during fire training.  Report of Injury or Illness (attached as Ex. M to Defendant's Motion).  On January 11, 2008, she suffered overexertion while on a fire ladder, and was placed on light duty until March 18, 2008.  Work Release (attached

as Ex. N to Defendant's Motion).  By June 19, 2008, Plaintiff had exhausted all of the sick time available to her for the year, and had to use personal leave. Plaintiff Dep. Ex. 1.[3]  On July 26, 2008, Plaintiff fell walking up some stairs. Report of Injury or Illness (attached as Ex. O to Defendant's Motion).  By August 14, 2008, she had exhausted her personal leave as well. Plaintiff Dep. Ex. 1. For the period covered by her 2008 evaluation, Plaintiff incurred 172.42 hours of absences from work and was tardy on six occasions. Plaintiff Dep. pp. 47-48.  On January 29, 2009, Plaintiff injured her elbow while helping to lift a large dog into the back of a truck. Report of Injury or Illness (attached as Ex. P to Defendant's Motion).  She was placed on light duty until March 2, 2009.  Work Release (attached as Ex. Q to Defendant's Motion).

On February 25, 2009, Baldasarre prepared Plaintiff's annual performance evaluation for year 2008. Plaintiff Dep. Ex. 11.  That was the first time Baldasarre had evaluated Plaintiff, having become her supervisor in 2008. Plaintiff Dep. p. 42. She received positive comments such as "Officer Cooper shows a good understanding of the purposes, objectives, practices and procedures of the department," "Officer Cooper recognizes the importance of quality service," "Officer Cooper is consistently dependable in carrying out responsibilities. She usually does not have to be watched over when performing on most situations," "Officer Cooper Plans and organizes with little or no assistance," "She is energetic and makes practical suggestions," "Officer Cooper works effectively with others works well with her squad mates and supervisors," and  "keeps a manageable work plan that is conducive for her job responsibilities."  Plaintiff Dep. Ex. 11.  However, under the heading for quality of work she was rated as "below expectations" because she "inconsistently does work that

---

[3]Plaintiff's supervisor at the time, Lt. Mike Baldasarre, kept a calendar on each of his subordinates to "track and go back throughout the year and see what they did when it comes time for evaluation." Baldasarre Dep. p. 32.

is complete or error free." Plaintiff Dep. Ex. 11.  Under the heading for attendance, Plaintiff graded out at "substantially below expectations" for her "frequent unexcused absences" and "below expectations" for "frequent excused or moderate unexcused absences." Plaintiff Dep. Ex. 11. Under the heading for safety and housekeeping, she was rated as "below expectations" for being "inconsistent in observing safety rules and regulations." Plaintiff Dep. Ex. 11.  Asked if she disagreed with any of those ratings, Plaintiff testified that she did not. Plaintiff Dep. pp. 46-47. Baldasarre then explained his ratings. He wrote that "Cooper continues to repeat mistakes on reports after being advised of the correct procedure." Plaintiff Dep. Ex. 11. Plaintiff agreed with that assessment, testifying that "[e]verybody makes mistakes." Plaintiff Dep. p. 47.  Baldasarre also noted that "absences [during] this review period [totaled] 172.42 hours [and a] number of tardies", and that "unscheduled absences place a strain on the manpower of the squad," a statement with which Plaintiff concurs. Plaintiff Dep. p. 48 & Ex. 11.  Baldasarre also noted the incident in which Plaintiff had arrested the minor for underage possession of tobacco, noting that "her judgment in this case was less than adequate." Plaintiff Dep. p. 48 & Ex. 11. Plaintiff agreed with that assessment as well. Plaintiff Dep. p. 48.  On March 16, 2009, Bailey signed off on Plaintiff's evaluation which had an overall score of 2.9. Plaintiff Dep. Ex. 11.

On February 25, 2009, the same day Baldasarre was preparing his evaluation of Plaintiff, she clocked in late. Plaintiff Dep. Ex. 1. She did it again on March 7, 2009, and was written up. Baldasarre Dep. Ex. 5.

By City policy, "regular employees receiving a rating of below expectations may be terminated from employment or be placed in a probationary status for a period not to exceed six months until his performance meets expectations." Plaintiff Dep. Ex. 13.  Because her overall score

was below expectations, on April 10, 2009, Plaintiff was placed on probation for six months. Plaintiff Dep. Ex. 12. Plaintiff concedes that she received the least severe treatment possible under the City's policy. Plaintiff Dep. p. 50.  Despite her probation, Plaintiff received a two and a half percent pay raise. Plaintiff Dep. Ex. 14.

On April 9, 2009, Plaintiff again injured her elbow while trying to handcuff a suspect. Report of Injury or Illness (attached as Ex. R to Defendant's Motion).  She was again placed on light duty until April 13, 2009.  Work Release (attached as Ex. S to Defendant's Motion). On April 13, 2009, her doctor released her to full duty with no restrictions of any kind.  Work Release (attached as Ex. T to Defendant's Motion).

On April 22, 2009, as a public safety officer cross-trained as a firefighter, Plaintiff was instructed by Baldasarre and Sgt. Ward Downey to report for a firefighter skills test. Plaintiff Dep. p. 30.  She claims she advised Baldasarre and Downey that she was supposed to have surgery on her elbow.  Plaintiff Dep. p. 30.  However, she concedes that at that time her physician had released her to full duty with no restrictions of any kind. Plaintiff Dep. p. 30.  When Plaintiff arrived for the test, she met with the firefighter in charge, Lt. Don Smith. Plaintiff Dep. p. 52 & Ex. 15.  She advised Smith that she was supposed to have elbow surgery. Plaintiff Dep. p. 52.  Smith advised Plaintiff that if she was unable to perform the test she could refuse, at which point Plaintiff told Smith that she had been released by her physician to work full duty. Plaintiff Dep. p. 52.  She then attempted the test, but did not complete it in time. Plaintiff Dep. p. 53.  Following the test, Plaintiff advised Smith that she felt something "pop twice" in her elbow, and that she had injured her knee. Plaintiff Dep. p. 53. Subsequently, a Workers Compensation First Report of Injury or Illness form was filed and Plaintiff was placed on light duty with no use of her right arm or left leg.  Report of Injury or Illness

(attached as Ex. U to Defendant's Motion). Plaintiff remained on light duty for nearly four months until August 13, 2009.

In July 2009, Plaintiff filed her own charge of discrimination with the SCHAC in which she accused the City of retaliating against her because Johnson, her friend, had filed a charge of discrimination. Plaintiff Dep. Ex. 18.

Plaintiff received her Right to Sue letter from the Equal Employment Opportunity Commission on March 8, 2010. Plaintiff filed the present action on May 10, 2010.[4]

## III.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could

---

[4] On March 29, 2010, Plaintiff's employment with Defendant was terminated. On May 3, 2010, Plaintiff filed a second Charge of Discrimination, alleging retaliation with respect to her termination. However, in her Complaint, Plaintiff refers only to her July 13, 2009, Charge of Discrimination. See Complaint ¶¶ 10-14. Thus, the only issues before this court are those arising out of her July 13, 2009, Charge of Discrimination. Further, the parties have stipulated that any claims associated with this case would be based on facts occurring on or before September 20, 2009. See Plaintiff Dep. p. 80.

reasonably find for it. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. <u>Barber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. <u>See</u> <u>Celotex</u>, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); <u>see also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.    DISCUSSION

### A.    Retaliation Framework

Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). In the

absence of direct evidence[5], the burden-shifting framework set forth in <u>McDonnell Douglas Corp.</u> <u>v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies in retaliation cases. Generally speaking, to establish a <u>prima facie</u> case of retaliation under Title VII, a plaintiff must show (1) he engaged in protected activity, (2) the employer took adverse employment action against him, and (3) a causal connection existed between the protected activity and the adverse action. <u>Ross v.</u> <u>Communications Satellite Corp.</u>, 759 F.2d 355, 365 (4th Cir.1985); <u>Laughlin v. Metropolitan</u> <u>Washington Airports Authority</u>, 149 F.3d 253, 258 (4th Cir.1998); <u>Causey v. Balog</u>, 162 F.3d 795, 803 (4th Cir.1998). If Plaintiff establishes a <u>prima facie</u> case, Defendant can rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. At that point, Plaintiff has the opportunity to prove that Defendant's legitimate, non-retaliatory reason is pretextual. <u>Matvia v. Bald</u> <u>Head Island Management</u>, 259 F.3d 261, 271 (4th Cir.2001).

**B.    Third-Party Retaliation**

Plaintiff alleges that Defendant retaliated against her because of her relationship with Carol Johnson, a former employee who filed a charge of gender discrimination against Defendant. Recently, the Supreme Court addressed the issue of third-party retaliation. In <u>Thompson v. North</u> <u>American Stainless, LP</u>, 131 S.Ct. 863 (2011), the plaintiff claimed he had been fired because his fiancée engaged in activity protected under Title VII. Quoting its holding in <u>Burlington N. & S.F.R.</u>

---

[5]In a footnote, Plaintiff refers to evidence that Bailey admittedly made negative comments regarding women. <u>See</u> Plaintiff's Response p. 11 n. 24. Direct evidence of retaliation is "evidence of conduct or statements that both reflect directly on the alleged [retaliatory] attitude and that bear directly on the contested  employment decision." <u>Cassity v. Geren</u>, 749 F.Supp.2d 380, 402 (D.S.C. 2010) (citing <u>Taylor v. Va. Union Univ.</u>, 193 F.3d 219, 232 (4th Cir.1999) (<u>en</u> <u>banc</u>), abrogated on other grounds, <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003)).  Bailey's comments about women reflect neither a retaliatory attitude nor the contested employment decision.

<u>Co. v. White</u>, 548 U.S. 53, 68 (2006), that "Title VII's antiretaliation provision prohibits any employer action that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination,' " the Court easily found that it is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancée would be fired." <u>Thompson</u>, 131 S.Ct. at 868.

The more difficult question the Court faced in that regard was just how broad a net to cast over the class of protected individuals.

> We must also decline to identify a fixed class of relationships for which third-party reprisals are unlawful. We expect that firing a close family member will almost always meet the Burlington standard, and inflicting a milder reprisal on a mere acquaintance will almost never do so, but beyond that we are reluctant to generalize. As we explained in <u>Burlington</u>, 548 U.S., at 69, 126 S.Ct. 2405, "the significance of any given act of retaliation will often depend upon the particular circumstances."

<u>Id.</u> The Court "[reemphasized], however, that 'the provision's standard for judging harm must be objective,' so as to 'avoid] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings.' " <u>Id.</u> (quoting <u>Burlington</u>, 548 U.S. at 68–69). The evidence in the record indicates that Plaintiff and Johnson are friends. Further, the harm Plaintiff claims to have suffered as a result her association with Johnson is her placement on probation on April 10, 2009, and a hostile work environment. Thus, the circumstances presented here fall somewhere between the "firing of a close family member" and "a milder reprisal on a mere acquaintance."

C.     **Prima Facie Case of Retaliation**

    1.     **Protected Activity**

The holding in Thompson does not appear to change the general, prima facie framework applied in retaliation cases.  It is undisputed that Johnson engaged in protected activity by filing her Charge of Discrimination in December of 2008.  Thus, Plaintiff must show that she suffered an adverse employment action and that a causal connection exists between the adverse action and Johnson's protected activity.

    2.     **Adverse Employment Action**

        a.     **Probation**

On April 10, 2009, Plaintiff was placed in probationary status for six months for receiving an overall evaluation of "below expectations" on her performance appraisal for 2008.  The 2008 performance appraisal was Plaintiff's first evaluation completed by Baldasarre.  Baldasarre cited Plaintiff's repeated mistakes on reports after being advised of the correct procedure, her numerous absences and tardies and the fact that "unscheduled absences place a strain on the manpower of the squad," and her "less than adequate" judgment in arresting the minor for possession of tobacco as reasons for her "below expectations" rating.  Plaintiff argues that she had never before received such low ratings, but concedes the points made by Baldasarre in the evaluation.  Despite her probationary status, Plaintiff still received a pay increase.

As mentioned above, in Burlington, the Supreme Court clarified that a different and less strenuous standard is used to define adverse employment actions in the retaliation context as opposed to other Title VII contexts: "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington,

-14-

548 U.S. at 64.[6] However, the anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Id. at 67. Thus, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 68 (quotation marks and citations omitted). Reading Burlington in conjunction with Thompson and applying them to the facts of this case, the question becomes whether placing Plaintiff on probation might reasonably have dissuaded Johnson from supporting her charge of discrimination. Pursuant to Defendant's policy, Plaintiff was placed on probation as a direct result of her "below expectations" performance evaluation. The City's policy regarding probation provides that "[a]ny subsequent evaluation with a rating of "Below Expectations" will result in termination." Plaintiff has presented sufficient evidence to create a dispute of fact whether Plaintiff's placement on probation constitutes an adverse employment action.

### b.     Hostile Work Environment

Plaintiff also claims that she was subjected to a hostile work environment in retaliation Johnson's Charge of Discrimination. In Plaintiff's Charge of Discrimination, Plaintiff claims that "I have been subjected to discriminatory terms and conditions of employment in that management nor co-workers would talk to me in roll call. My supervisor on at least one occasion did not aid me while I was making an arrest. I called for an assisting officer, but no officer came." Plaintiff Dep. Ex. 18.

---

[6]Defendant argues that Plaintiff's placement on probation is not an adverse employment action as determined in Cornelius v. City of Columbia, 663 F.Supp.2d 471, 476-77 (D.S.C. 2009). However, the Cornelius court applied the more stringent standard set forth in James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375-76 (4th Cir. 2004), which predates Burlington.

"Retaliatory harassment can constitute adverse employment action." <u>Von Gunten v. Maryland</u>, 243 F.3d 858, 869 (4th Cir.2001), overruled on other grounds by <u>Burlington</u>, 548 U.S. at 67–68. To succeed on this claim, Plaintiff must show that the harassment was sufficiently severe or pervasive to dissuade a reasonable employee from engaging in protected activity. <u>Thorn v. Sebelius</u>, 766 F.Supp.2d 585, 601 (D.Md. 2011). The actions about which Plaintiff complains do not rise to the level of an adverse employment action. <u>See</u> <u>Burlington</u>, 548 U.S. at 68 ( holding that "petty slights" such as "snubbing by supervisors" is not actionable retaliation).[7]

### 3. Causal Connection

#### a. Probation

Defendant argues that Plaintiff also fails to present evidence sufficient to establish a causal connection between Johnson's protected activity and her placement on probation. Plaintiff's placement on probation was a direct result of Baldasarre's evaluation of her, and Plaintiff argues that, prior to Johnson's charge, Plaintiff had never received an overall evaluation of "below expectations." However, Defendant argues that Plaintiff cannot show that Baldasarre was aware of Johnson's Charge of Discrimination. An employer's knowledge that the employee (or here, her friend) engaged in protected activity is "absolutely necessary to establish the third element of a <u>prima</u>

---

[7]Subsequent to filing her Charge of Discrimination, Plaintiff supplemented her charge with numerous, additional instances of retaliation. Plaintiff Dep. Ex. 20. It is unnecessary to address each of these instances individually because, even if, together or separately, they amount to adverse employment actions, Plaintiff has no knowledge of whether the individuals who committed these alleged hostile actions were aware of the Charge of Discrimination filed by Johnson. Plaintiff Dep. pp. 69-70, 72, 74-79. An employer's knowledge that the employee (or here, her friend) engaged in protected activity is "absolutely necessary to establish the third element of a <u>prima facie</u> case." <u>Dowe v. Total Action Against Poverty</u>, 145 F.3d 653, 657 (4th Cir.1998); <u>see also</u> <u>Baqir v. Principi</u>, 434 F.3d 733, 748 (4th Cir.2006); <u>Hooven-Lewis v. Caldera</u>, 249 F.3d 259, 273 (4th Cir.2001). Thus, Plaintiff cannot establish a causal connection between the actions and the protected activity.

facie case." Dowe v. Total Action Against Poverty, 145 F.3d 653, 657 (4th Cir.1998); see also Baqir v. Principi, 434 F.3d 733, 748 (4th Cir.2006); Hooven-Lewis v. Caldera, 249 F.3d 259, 273 (4th Cir.2001). However, while Baldasarre completed the performance evaluation, it appears, although it is not entirely clear from the record, that Bailey, the Director of the Department of Public Safety, placed Plaintiff on probation. The Memorandum notifying Plaintiff that she was being placed on probation was from Bailey and signed by Bailey, Baldasarre, and John Smithson, the City Manager. Plaintiff Dep. Ex. 12. Johnson's Charge of Discrimination was filed on December 29, 2008, and Verlinda Jones, the Human Resources Director for the City of North Myrtle Beach was notified of the filing on January 2, 2009. Notice of Johnson's Charge of Discrimination (attached as Ex. B to Defendant's Motion). It is reasonable to infer that Bailey, as the Director of the department in which Johnson worked, was made aware of her charge once the City was put on notice. Thus, Baldasarre's knowledge of Johnson's charge is not necessary to establish a causal connection.

Generally, the passage of time tends to negate any inference of a causal connection. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that temporal proximity must be "very close" to infer causality at prima facie case) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3-month period insufficient to prove causal connection); Hughes v. Derwinski, 967 F.2d 1168, 1174-1175 (7th Cir.1992) (4-month period insufficient)); Dowe, 145 F.3d at 657 (3-year lapse insufficient). Here, Johnson's charge was filed December 29, 2008, Plaintiff's performance appraisal was completed on February 28, 2009, and Plaintiff was placed on probation on April 10, 2009. Thus, approximately three and a half months lapsed between the protected activity and the probation. Even under a first-party retaliation claim, this length of time is insufficient to alone establish a causal connection, see, e.g., Richmond, 120

-17-

F.3d at 209.  Nonetheless, even if Plaintiff has presented sufficient evidence to show a causal connection, her claim fails because she fails to show pretext, as discussed below.

### b.    Hostile Work Environment

Plaintiff claim of a retaliatory hostile work environment is based upon her claims that her co-workers and managers ignored her during roll call and that her supervisor declined to assist her during an arrest when she requested his assistance.  However, Plaintiff cannot recall whether these events occurred (or, with respect to being ignored, began) before or after Johnson filed her Charge of Discrimination.  Plaintiff Dep. pp. 65-66.  Thus, Plaintiff cannot establish a causal connection between Johnson's Charge of Discrimination and these actions.[8]

In sum, Plaintiff fails to establish a _prima_ _facie_ case of retaliation.  However, to the extent she has established a _prima_ _facie_ case with respect to her probation, Defendant has proffered a legitimate, non-retaliatory reason for its actions.

### D.    Pretext

Defendant's legitimate, non-retaliatory reason for placing Plaintiff on probation is simple and straightforward.  She received an overall performance appraisal rating of "below expectations" and, thus, was placed on probation pursuant to City policy.  Therefore, Plaintiff must present sufficient evidence from which a reasonable juror could find that Defendant's reason is not it's real reason, but is pretext for a retaliatory reason.  Plaintiff concedes that the received the least harsh consequence she could receive under the City's policy.  She argues, though, that prior to Johnson filing her Charge of Discrimination, she had never received a such a low score on a performance appraisal.  However, none of her prior performance appraisals were completed by Baldasarre.  It is the perception of the

---

[8]_See_ _also_ footnote 7.

decision maker which is relevant, and not the perception of the employee, co-workers, or others that is critical and controlling. See, e.g., DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir.1998). Thus, that her prior supervisors found her performance in previous years to meet expectations is of no moment.  Furthermore, Plaintiff admitted to the shortfalls noted by Baldasarre in her evaluation. Accordingly, that Plaintiff received her lowest evaluation, which led to her being placed on probation, after Johnson filed her Charge of Discrimination, while perhaps sufficient to create a causal connection, is insufficient to establish pretext.

In sum, it is Plaintiff's burden ultimately to show that illegal retaliation was the motivating factor in placing her on probation. It is not necessary for this court to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for Defendant's decision. Hawkins v. Pepsico, 203 F.3d 274, 279 (4th Cir.2000). "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived, ... does not necessarily establish that [Plaintiff's] proffered reason is correct. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 at 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "It is not enough to disbelieve the [employer]." Love–Lane v. Martin, 355 F.3d 766, 788 (4th Cir.2004). Plaintiff must show a reasonable jury could believe her explanation of intentional retaliation. Id. Plaintiff has failed refute Defendant's legitimate, non-retaliatory reason for her adverse employment action and failed to meet her burden of creating a genuine dispute of material fact as to whether Plaintiff's placement on probation was in retaliation for Johnson's Charge of Discrimination.  Therefore, summary judgment is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendant's Motion for Summary Judgment (Document # 16) be granted and this case be dismissed it its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 25, 2012
Florence, South Carolina

**The parties are directed to the important notice on the following page.**